IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 0 7 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MARY RAMIREZ, | § | |
| JENNIFER ANGELA GOMEZ, | § | |
| STACY AMY ROBERTS, | § | |
| SARA ANN SOSA and | § | CIVIL ACTION NO. |
| ISELA VILLARREAL | § | |
| | § | B - 02 - CV - 239 |
| VS. | § | |
| | § | |
| DAVID CARAVA, JOINER FOOD | § | |
| SERVICE, INC. and DRC | § | |
| DISTRIBUTORS, LTD. | § | |

## PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE U. S. DISTRICT COURT:

COME NOW **MARY RAMIREZ, JENNIFER ANGELA GOMEZ, STACY AMY ROBERTS, SARA ANN SOSA** and **ISELA VILLARREAL**, Plaintiffs herein, complaining of David Carava, Joiner Food Service, Inc. and DRC Distributors, Ltd., and for cause would respectfully show unto the Court and jury the following:

### I.

### JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter in controversy in this action, and the claims are within the jurisdictional limits of this Court. Venue is also proper in this Court pursuant to Texas Civil Practice and Remedies Code §15.002, because all or a substantial part

of the events or omissions giving rise to the claims herein occurred in Cameron County, and the Defendants' residence at the time the causes of action accrued was in Cameron County, Texas.

## II.

## REQUEST FOR JURY TRIAL

Plaintiffs MARY RAMIREZ, JENNIFER ANGELA GOMEZ, STACY AMY ROBERTS, SARA ANN SOSA and ISELA VILLARREAL request that a jury of their peers be convened to determine the factual issues in this case, and have tendered to this Federal District Court the statutory jury application fee.

## III.

## PARTIES

Plaintiff MARY RAMIREZ is a resident of Los Fresnos, Cameron County, Texas.

Plaintiff JENNIFER ANGELA GOMEZ is a resident of Raymondville, Willacy County, Texas.

Plaintiff STACY AMY ROBERTS is a resident of Raymondville, Willacy County, Texas.

Plaintiff SARA ANN SOSA is a resident of Raymondville, Willacy County, Texas.

Plaintiff ISELA VILLARREAL is a resident of Harlingen, Cameron County, Texas.

Defendant DAVID CARAVA is an individual resident of Harlingen, Cameron County, Texas, at all relevant times herein. Service has been had upon this Defendant and an Answer and appearance has been filed.

Defendant JOINER FOOD SERVICE, INC., is a Texas Business Corporation incorporated under the laws of the State of Texas. Service has been had upon this Defendant and an Answer and appearance has been filed.

Defendant DRC DISTRIBUTORS, LTD., is a Texas Business Corporation incorporated under the laws of the State of Texas. Service may be had upon its registered agent, David R. Carava and by serving Carava's attorney of record, Ms. M. Cheryl Kirby, via certified mail, return receipt requested, at 711 Navarro, Suite 600, San Antonio, TX 78205

### IV.

### FACTUAL BACKGROUND AND ALLEGATIONS

The claims made by each of the Plaintiffs are based on the actions of David Carava, the general manager and apparent owner of DRC Distributors, Ltd. The actions of Mr. Carava constituted discrimination on the basis of sex and sexual harassment, in the creation of a hostile work environment and *quid pro quo* requests, as well as assault, battery, intentional infliction of emotional distress and other violations of state law. After purchasing DRC Distributing, Ltd., Mr. Carava failed to notify his employees of the name of the new company, and instead continued to rely on the former company's trade name, Joiner Food Service. Similarly, Defendant Joiner Food Service, Inc. failed to notify its employees that the sale of the company was to a new company, rather than simply the purchase of the old company's stock. As a result, Plaintiffs never learned that they in fact had a new and different employer. Such actions served to make Plaintiffs employees of both, DRC Distributors, Ltd. and Joiner Food Service, Inc. as co-employees, for which Defendants are jointly and severally liable.

After taking over the company, Defendant Carava began making numerous comments and taking numerous actions that resulted in a hostile work environment towards women in general, and towards the Plaintiffs in particular, including the requests for dates and sexual favors. Starting in or about August 2000, Mr. Carava started making comments that if the employees

would do good for him, he would do good for them, referring to sexual or other such favors. Mr. Carava would ask employees out on dates, make sexual remarks, offer rewards to women who responded favorably, and punish, chastise, yell at, or otherwise retaliate against women who did not respond favorably. If an employee would reject his advances, he would worsen the employee's working conditions to the point of forcing them to resign. Alternatively, if he believed the employees would be "receptive" towards his advances, he would improve their working conditions and pay. The facts involved with each are described below.

**1. Mary Ramirez**

Prior to Mr. Carava's purchasing Joiner Food Service, Inc. in May 2000, Ms. Ramirez had never had any concerns or problems involving sexual discrimination or harassment. In July 2000, however, Mr. Carava started complimenting Ms. Ramirez and asking her out on dates. As a result, they began a mutual relationship that affected her personal and professional situation. Shortly thereafter, Ms. Ramirez separated from her husband in August 2000. It was only after her relationship with Mr. Carava began that Ms. Ramirez was promoted to Office Manager from her former position of receptionist, and her salary was raised from $5.50 per hour to $8.00 per hour, and later to $10.00 and $17.00 per hour. So long as Ms. Ramirez continued to maintain a relationship with Mr. Carava he would reward her with salary and gifts.

The relationship began to sour, however, when Ms. Ramirez caught Mr. Carava with another employee, Belinda Franco, coming out of a hotel room. Ms. Franco began to cry and got upset because she did not know Mr. Carava had been having a relationship with Ms. Ramirez. Mr. Carava apparently was also having a relationship with Ms. Franco, and had told

her he was planning to take her with him to California. Mr. Carava told Ms. Ramirez he had no explanation because he realized he had been caught. A short time later, Ms. Franco quit her position at the company, but Ms. Ramirez called her and asked her to return because Ms. Franco needed the job for her family. Although Ms. Ramirez also threatened to quit, Mr. Carava also convinced her to stay, with the promise that they would maintain only a platonic, and no longer a sexual, relationship. Thereafter, Mr. Carava would continue to invite Ms. Ramirez out, but she would refuse. As a result, he began to treat her very rudely and inappropriately, he would make derogatory remarks, and he would generally make her working conditions intolerable. He would often yell and slam doors at Ms. Ramirez, he would make sarcastic remarks to her, and at one point he physically broke a keyboard in front of her. Mr. Carava would frequently state that he could be vengeful, and that "once personal turns to business, business is business, and you better watch it little girl." Because of the treatment by Mr. Carava, Ms. Ramirez determined that she could no longer tolerate his treatment and on February 19th she was constructively terminated and therefore submitted her resignation.

## 2.   Jennifer Angela Gomez

Ms. Gomez started working for Joiner Food Service, Inc./DRC Distributors, Ltd. on August 20, 2000, as a receptionist. After Ms. Gomez had been working for Joiner Food Service, Inc./DRC Distributors, Ltd. for about two (2) months, Mr. Carava started calling her on the telephone from California. Mr. Carava would talk about Ms. Gomez' potential, and he asked to discuss this with her further over lunch. After their lunch meeting, however, Mr. Carava would attempt to take Ms. Gomez to his hotel, but she refused to go into the hotel,

which seemed to frustrate Mr. Carava. He would later send her notes telling her she was pretty and that he wanted to be with her, explaining that he could make her happy. It was after these notes that he promoted Ms. Gomez to Sales Manager, earning $13.00 per hour. During meetings at the office, Mr. Carava would close his door while talking to Ms. Gomez, even after she would ask him not to. In spite of Mr. Carava's repeated requests to go out with Ms. Gomez, she would continue to refuse. When she confronted him with the possibility of his getting sued for doing so, he replied that he knew what trouble he could get into, but that he was willing to risk the danger because he wanted to be with Ms. Gomez. At one point, Mr. Carava also complained to Ms. Gomez that a receptionist that had been hired was unattractive, calling her a "scrote." He would also often ask Ms. Gomez about the measurements of receptionists that were to be hired. On Ms. Gomez' wedding anniversary, February 15, 2001, Mr. Carava fired the Warehouse Supervisor, Delia Rios, and later asked Ms. Gomez, Ms. Ramirez and Ms. Sosa to work late, and Ms. Roberts agreed to help as well. That evening, Ms. Gomez stayed working until 9:30 p.m., and the others stayed working until midnight. During that time, Mr. Carava continued to try to get Ms. Gomez and Ms. Roberts to go out with him. When Ms. Gomez continued to refuse, however, he stated that it was "my way or you can walk, baby, walk. I'm a smart 'motherfucker' who's made my mother's business very profitable." He then told Ms. Roberts that he fired Ms. Rios because "she was a fucking menopause bitch." Ms. Rios was approximately 50 years old. Mr. Carava also wanted Ms. Gomez to indicate on Ms. Rios' Exit Interview Form that Ms. Rios had failed to do her job, but Ms. Gomez refused. After she could no longer tolerate the requests and taunts of Mr. Carava, Ms. Gomez was constructively terminated and submitted her resignation on February 19, 2001.

### 3. <u>Stacy Amy Roberts</u>

Ms. Roberts started with Joiner Food Service, Inc./DRC Distributors, Ltd. in November 2000 as an Office Assistant, earning $7.00 per hour. Ms. Roberts' problems with Mr. Carava started in December 2000. At that time, he began making sexual comments to her, asking her out, and stating that he could do sexual favors for her. He would tell her she was pretty and would claim that he could show her things because he had been with women. He would constantly try to pressure her to go out with him, and at one point even said that it was "time for [her] daily pressure" to go out with him. In an effort to entice her to go out with him and make her available to go out with him, he moved her to the sales position, at which she could earn more money through commissions. In January 2001, she began as a Sales Representative, earning her salary in addition to commissions. She earned $547.00 in commissions for two weeks in January 2001.

After she continued to refuse to go out with Mr. Carava, however, he began to treat her badly, including making rude and derogatory comments to her. As a result, at one point Ms. Roberts yelled at him "I only want to work for you!" and ran crying hysterically to the bathroom. Apparently the more Ms. Roberts would refuse Mr. Carava's advances, the more he would pressure her. He acknowledged to Ms. Ramirez that he had been mean to Ms. Roberts and told Ms. Ramirez that he was going to fire Ms. Roberts. After she could no longer take the harassment and pressure, Ms. Roberts was constructively terminated and submitted her resignation on February 19, 2001.

### 4.  Sara Ann Sosa

Ms. Sosa started working for Joiner Food Service, Inc./DRC Distributors, Ltd. on October 10, 2000, as a receptionist. Shortly thereafter, she was promoted to Collections Agent, where she was earning $7.50 per hour, and later $9.00 per hour.

After Mr. Carava's efforts to date Mary Ramirez, Jennifer Gomez and Stacy Roberts did not succeed, he began trying to get Ms. Sosa to go out with him. He began by complimenting her and by making favorable comments to her. He would tell Ms. Sosa and Ms. Gomez that Ms. Sosa had a nice body and nice breasts, and he would often flirt with her and stare at her. At the end of January 2001, he began asking her out on dates as well. Although she would refuse, Mr. Carava's advances made her uncomfortable. Mr. Carava would also make sexual remarks about Ms. Sosa's body, as well as other offensive and rude remarks about other employees. At one point, Mr. Carava told Ms. Gomez that he was like a "spider," indicating he was a prowler going after Ms. Sosa, and that he was going to "stay on her until he got her." Ms. Sosa was in fear of being alone with Mr. Carava, for which she filed a complaint with Ms. Ramirez on February 16, 2001. As a result of the continued pressure and actions of Mr. Carava, Ms. Sosa was constructively terminated and submitted her resignation on February 19, 2001.

### 5.  Isela Villarreal

Ms. Villarreal started working for Joiner Food Service, Inc./DRC Distributors, Ltd. on June 8th as a temporary receptionist, earning $6.00 per hour. On or about August 15th, she began working in the Accounts Receivable department, earning $8.00 per hour, and her salary

was later increased to $10.00 per hour, and thereafter to $11.55 per hour.

Although Mr. Carava did not directly attempt to ask Ms. Villarreal out, he would instead attempt to get her to leave her husband. During the week of February 1, 2001, Mr. Carava told Ms. Villarreal that he had heard some things about her husband and that she needed to leave him. He would also make similar comments about other women's husbands. Mr. Carava was apparently also upset that Ms. Villarreal had become pregnant. He complained to numerous employees, including Ms. Roberts, Ms. Sosa and Ms. Ramirez, that Ms. Villarreal would take time off to go to doctor's appointments. During that time period, Mr. Carava had made arrangements to switch from providing a group health insurance policy to providing insurance only for a select few employees. During this time, he arranged for health insurance for male employees and their families, but not for the families of female employees. He explained that although he knew this was wrong, the men needed to support their families, and he did not want to support any "bastard husbands." As a result, health insurance was provided for the families of male employees, and for the child of Mary Ramirez (who he had been dating), but not for the families of any other female employees.

Once Mr. Carava found out Ms. Villarreal was pregnant, not only did he not provide any health insurance for the child, but he even had her fired. Mr. Carava went so far as to tell Ms. Gomez and Ms. Sosa that he was going to fire Ms. Villarreal because she was pregnant, and that he was "not going to support her 50 kids and her bastard husband." Prior to this time, Ms. Villarreal had been performing her work satisfactorily, and she had even gotten a raise in January 2001. In spite of this, on February 5, 2001, Mr. Carava terminated Ms. Villarreal's employment, without any explanation as to why he was terminating her, what she had been

doing wrong, or what actions she could take to correct any allegedly improper behavior or actions. Instead, he told her only "let's see if your husband can take care of you now!" Because Ms. Ramirez was also aware that Mr. Carava was terminating Ms. Villarreal because she was pregnant, he told her "if you fucking let a word out [about firing Ms. Villarreal because she was pregnant] then you're fired too."

## V.

## CAUSES OF ACTION

The actions of Defendants DRC Distributors, Ltd., Joiner Food Service, Inc. and David Carava set out above constitute discrimination on the basis of sex and sexual harassment, and the creation of a hostile work environment and *quid pro quo* sexual harassment, for which Defendants are liable pursuant to the Texas Commission on Human Rights Act, as well as for the common law violations of assault and battery, invasion of privacy, wrongful constructive discharge and malice. In addition, the actions of Defendant David Carava also constituted an intentional infliction of emotional distress for which he is personally liable.

As a result of the actions of Defendants, Plaintiffs have endured and suffered damages, including physical and mental pain, suffering and anguish, loss of self esteem and confidence in their job performance, humiliation and damage to their reputations. Plaintiffs have also incurred a loss of income and loss of earnings, and they will continue to lose income in the future. Plaintiffs have also incurred, and will continue to incur, expenses for reasonable and necessary medical and psychological care and attention as a result of the actions of Defendants herein.

## VI.

## **DAMAGES**

As a result of the acts and/or omissions of Defendants constituting sexual discrimination and harassment, assault and battery, invasion of privacy, wrongful constructive discharge, malice and intentional infliction of emotional distress, Plaintiffs have suffered damages in the past, and will continue to suffer damages in the future in the following particulars:

a. past and future physical pain, anguish and suffering;

b. past and future physical mental and emotional impairment and incapacity;

c. past and future mental and emotional anguish, pain, and suffering;

d. reasonable and necessary medical and psychological expenses in the past and in the future; and,

e. loss of earnings and impaired earning capacity in the past and in the future.

Upon final conclusion and hearing, Plaintiffs MARY RAMIREZ, JENNIFER ANGELA GOMEZ, STACY AMY ROBERTS, SARA ANN SOSA and ISELA VILLARREAL seek recovery of their actual and compensatory damages, including damages for their physical and mental pain, suffering and anguish, emotional distress and anxiety, past and future lost wages and earnings, benefits and salary caused by Defendants' actions in an amount to be determined by the jury.

## VII.

## PUNITIVE DAMAGES

In addition, the acts described above were committed by Defendants with malice, which included a specific intent to cause substantial injury to Plaintiffs, or a deliberate or conscious indifference to the rights, safety or welfare of Plaintiffs MARY RAMIREZ, JENNIFER ANGELA GOMEZ, STACY AMY ROBERTS, SARA ANN SOSA and ISELA VILLARREAL, considering the risk and magnitude of potential harm, thus entitling Plaintiffs to recover punitive or exemplary damages from Defendants in an amount to be determined by the jury.

The above and foregoing acts and/or omissions committed by Defendants have caused Plaintiffs damages within the jurisdictional limits of this Court. Plaintiffs further seek pre-judgment and post-judgment interest on the damages suffered, as well as attorney's and experts' fees pursuant to applicable law, as a result of the incidents in question.

## VIII.

## CONDITIONS PRECEDENT

All conditions precedent to the filing of this claim and the recovery of the damages prayed for herein have occurred and have been performed.

## IX.

## **PRAYER**

Because of all the above and foregoing, Plaintiffs **MARY RAMIREZ, JENNIFER ANGELA GOMEZ, STACY AMY ROBERTS, SARA ANN SOSA** and **ISELA VILLARREAL** have been damaged and will continue to be damaged. Plaintiffs request actual, compensatory and punitive or exemplary damages in an amount commensurate with the extent of Defendants' actions and their ability to pay any such amount.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs **MARY RAMIREZ, JENNIFER ANGELA GOMEZ, STACY AMY ROBERTS, SARA ANN SOSA** and **ISELA VILLARREAL** pray that Defendants be cited according to law to appear and answer herein. Plaintiffs further pray that upon final trial herein, that they have and recover from Defendants the damages described above, in the full amount allowed by law, together with the following:

(1) Judgment for actual and compensatory damages against Defendants;

(2) Punitive or Exemplary damages;

(3) Pre-judgment interest at the maximum legal rate;

(4) Post-judgment interest on said decision of the maximum legal rate, until paid in full;

(5) Reasonable and necessary attorney's fees;

(6) All costs of court, including costs of expert witnesses; and,

(7) Such other and further relief to which Plaintiffs may be justly entitled, at law and in equity.

Signed on this the 7th day of April, 2003.

                Respectfully submitted,

                **LAW OFFICE**
                **J. ARNOLD AGUILAR**
                Artemis Square, Suite H-2
                1200 Central Boulevard
                Brownsville, Texas  78520
                Telephone   : (956) 504-1100
                Facsimile    : (956) 504-1408

By: _____
     J. Arnold Aguilar
     State Bar No. 00936270
     Cameron County ID No. 3617

Attorney for Plaintiffs,
MARY RAMIREZ, JENNIFER ANGELA GOMEZ, STACY AMY ROBERTS, SARA ANN SOSA and ISELA VILLARREAL

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION** has on this the 7th day of April, 2003, been forwarded via hand delivery to:

Ms. M. Cheryl Kirby
OPPENHEIMER, BLEND, HARRISON
    & TATE, INC
711 Navarro, Suite 600
San Antonio, TX 78205


Mr. Benjamin M. Yudesis
Attorney at Law
322 E. Harrison Avenue, Suite A
Harlingen, TX 78550

_____
J. Arnold Aguilar